IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICCI LEWIS, | ) | CASE NO. 1:16 CV 741 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| CHRISTOPHER LaROSE, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Ricci Lewis for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Lewis was convicted by a Lake County Court of Common Pleas jury in 2012 of aggravated burglary, felonious assault, aggravated robbery with firearm specifications [3] and is serving sentence of twenty years.  He is currently incarcerated at the Trumbull Correctional Institution in Leavittsburg, Ohio.[4]

In his petition, Lewis raises eleven grounds for habeas relief.[5]  The State has filed a return of the writ arguing that the petition should be denied and dismissed because the claims

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge James S. Gwin by non-document order dated April 28, 2016.

[2] ECF # 1.

[3] *Id.*

[4] http://www.drc.state.oh.us/OffenderSearch

[5] ECF # 1.

do not present cognizable grounds for federal habeas relief.[6]  Lewis has filed a traverse[7] and the State has filed a reply.[8]

For the reasons that follow, I will recommend Lewis's petition be dismissed in part and denied in part.

## Facts

### A.    Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[9]

This case involves a home invasion that occurred in part of a duplex located in Painesville, Ohio rented by Russell Perry and Shaquetta Page.[10]

The home had two entrances, but the back door, which leads directly into the kitchen, served as the primary entrance.[11]  On the evening in question, Russell and Shaquetta had a late dinner with her three children and one of Russell's daughters.[12]  When the meal ended

---

[6] ECF # 9.

[7] ECF # 10.

[8] ECF # 11.

[9]  Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[10] ECF 9, Attachment 1 at 120.

[11] *Id*. at 121.

[12] *Id*.

shortly before 11:00 p.m., Shaquetta and all four children went upstairs to prepare for bed.[13]

Russell stayed downstairs to clean the kitchen.[14]  Eventually, Russell took the trash outside

to a container near the back door.[15]

As Russell reentered the home and began to shut the back door, two men pushed on

the door and forced their way into the kitchen.[16]  Initially the first man pushed Russell

backwards with his hands.[17]  As Russell tried to resist, the second intruder produced a small

silver firearm and place the barrel directly on Russell's forehead and stated "[Y]ou know

what it is, we want everything, * * *."[18]

Although Russell no longer tried to resist, the confrontation continued resulting in

Russell being struck several times in the head.[19]  When Russell was finally subdued, he was

lying on his stomach with his face pressed to the floor.[20]  At first, Russell thought the first

man was pressing the barrel of the firearm to back of his head and made no attempt to get up

---

[13] *Id*.

[14] *Id.*

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

[19] *Id*.

[20] *Id*. at 122.

for a short period.[21]  While lying on the floor, Russell saw the second man exit the kitchen and walk through the dining and living room.[22]

The second intruder proceeded up the stairs and started down the hallway toward Shaquetta's bedroom.[23]  As the man walked toward her, Shaquetta was talking on her cell phone with her sister.[24]  Initially, Shaquetta believed that the man entering the room was her brother; as a result, she told her sister goodbye and hung up the phone.[25] She then turned toward the second man and quickly realized her mistake.[26]  But before she could do anything, the second man again pulled out a small firearm, placed it against Shaquetta's head, and said that he was going to rob her.[27]

Immediately after making the statement to Shaquetta, the second intruder heard a police siren going off in the distance.[28]  In response, he grabbed the cell phone from Shaquetta's hands and started looking for something else to take.[29]  When he did not see

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

anything, he ran into the hallway and down the stairs.[30] Shaquetta quickly checked on her children and then followed the second man down the stairs.[31]

While the second man was upstairs, Russell realized that the first man did not have a gun.[32]  He began to resist again and was able to throw the first intruder off him.[33]  Upon getting to his feet, Russell forced the first man out the back door.[34]  Although he followed the first man out the door, he did not chase him any further.[35] Instead, he planned to go across the street and use the phone of a local business to call police.[36]

After going downstairs, the second intruder exited through the back door.[37] Shaquetta followed the second man out the back door and saw him leap over the fence on the side of the yard.[38] She then walked toward the front of the home to meet Russell who was in the middle of the roadway.[39] Since Russell's daughter had used her cell phone to call the police

---

[30] *Id*.

[31] *Id*.

[32] *Id*.

[33] *Id*. at 122-23.

[34] *Id*. at 123.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*.

while the incident was still ongoing, the police arrived at the scene within five minutes after the second intruder ran away.[40]

Neither of the intruders was apprehended the evening of the incident.[41]  In speaking with the police, Russell stated that he had previously seen the first intruder at various places in the neighborhood but could only recall that his first name was "Ricci."  As to the second intruder with the firearm, Shaquetta likewise told the police that she recognized him from the neighborhood.[42] She tried to provide a name to the police for the second intruder during her initial statement, but that name was incorrect; several days later Shaquetta's friends informed her of the second man's correct name.[43]

Even though Shaquetta never saw the intruder who held Russell on the kitchen floor, she had a general idea of who he was based upon Russell's basic description.[44] Approximately three days after the incident, Shaquetta and Russell were at a local tavern having drinks when Shaquetta noticed the first intruder entering the bar.[45]  Upon recognizing Shaquetta, the man came over to the couple and spoke directly to Russell.[46]  Specifically, the

---

[40] *Id*.

[41] *Id*.

[42] *Id*.

[43] *Id*. at 123-24.

[44] *Id*. at 124.

[45] *Id*.

[46] *Id*.

man stated that Russell should not have contacted the police, and that they could have settled the matter "in the streets."[47]  When Russell did not respond, the man left them and went to another area of the tavern.[48]

Once this confrontation ended, Shaquetta and Russell left the tavern and called police.[49]  After meeting the police in the bar's parking lot, Shaquetta explained what had just happened, and then accompanied the officer back into the bar where she identified the man in question.  Based upon this, the police escorted the man outside and conducted a brief interview about the home invasion.[50]  Even though the police did not arrest the man at the time, they established that the man was Ricci R. Lewis.[51]

After the filing of an initial complaint in the Painesville Municipal Court, the grand jury returned a seven-count indictment against Lewis.[52]  These charges included two counts of aggravated burglary, three counts of aggravated robbery, one count of felonious assault, and one count of complicity to aggravated robbery.[53]   In addition to the primary offense,

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

each of the counts also had a firearm specification, which alleged that Lewis displayed or used a firearm while committing the underlying defense.[54]

Immediately prior to trial, the state dismissed the charge of complicity to aggravated robbery.[55]  As a result, Lewis was tried on the identical six charges brought against his co-defendant, Carvell J. Fomby, who was identified as the "second man" during the home invasion.[56] Given that the charges against Lewis and Fomby were predicated upon the same facts, their trials were consolidated.[57]

At the three-day jury trial conducted in May 2012, Russell and Shaquetta were the primary witnesses for the State.[58]  Russell testified that he was certain that Lewis was the person who attacked him.[59] In addition, Russell and Shaquetta both testified that a firearm had been held to their heads during the course of the incident.[60]

---

[54] *Id*. at 124-125.

[55] *Id*. at 125.

[56] *Id*.

[57] *Id*.

[58] *Id*. at 126.

[59] *Id*.

[60] *Id*.

The jury found Lewis guilty on all six counts with the firearm specifications.[61]  At the sentencing hearing, the court merged the two aggravated burglary counts.[62]  As to the remaining three counts, the court held that the two aggravated robbery accounts and sole felonious assault count could also be merged.[63]  Accordingly, Lewis was only sentenced to a single count of aggravated burglary, two counts of aggravated robbery, and two of the firearm specifications.[64]  In addition to imposing two three-year terms for the firearm specifications, the court ordered Lewis to serve two concurrent terms of eight years for the aggravated robbery counts, and a six year term on the remaining burglary count, to be served consecutively to the "aggravated robbery" terms, for an aggregate term of twenty years.[65]

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

**B.** **Direct Appeal**

*1.* ***Ohio Court of Appeals***

Lewis, through counsel, filed a timely[66] notice of appeal[67] with the Ohio Court of

Appeals. In his brief, Lewis filed twenty assignments of error:[68]

> 1. Defendant was denied his Sixth Amendment right to counsel when the court refused to allow court-appointed counsel to withdraw because of a breakdown in the attorney client-relationship.
>
> 2. Defendant was denied due process of law when the court refused to grant a continuance to defendant to obtain counsel after defendant was remanded to jail because of a failure to appear at a hearing before a judge for which he has no notice.
>
> 3. Defendant was denied due process of law when the court amended the indictment as to Ricci Lewis.
>
> 4. Defendant was denied due process of law when the court instructed that a meeting between defendant and Shaquetta Page gave rise to an inference if consciousness of guilt.
>
> 5. Defendant was denied due process of law when the court improperly singled out the "one witness" rule.
>
> 6. Defendant was denied due process of law when the court improperly referenced defendant as an accomplice.

---

[66] Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007) (unreported case). Lewis's conviction and sentence were journalized on June 1, 2012 (*id.* at 15) and the notice of appeal was filed on June 29, 2012. *Id.* at 21.

[67] *Id.*

[68] *Id*. at 28-34.

-10-

7.    Defendant was denied due process of law when the court lessened the burden of proof by instructing on the gist of the offense.

8.    Defendant was denied due process of law when the court failed to inform the jury that it must unanimously agree on theory in order to find defendant guilty.

9.    Defendant was denied due process of law when the court imposed consecutive sentences which were contrary to law.

10.    Defendant was denied due process of law when the court rotely recited the statutory criteria for imposing consecutive sentences.

11.    Defendant was denied due process of law and subjected to unconstitutional multiple punishments when he was set to be sentenced on two firearm specifications arising out of the same transaction.

12.    Defendant was denied due process of law and equal protection of law when he received a greater sentence than the co-defendant.

13.    Defendant was subjected to unconstitutional multiple punishments when the court failed to merge all offenses into one offense of aggravated burglary.

14.    Defendant was denied due process of law when the court sentenced defendant for merged offenses.

15.    Defendant was denied due process of law when he was convicted and sentenced under a multiplicitious indictment.

16.    Defendant was denied due process of law when the court overruled his motion for judgment of acquittal.

17.    Is entitled to a new trial as the verdicts are against the manifest weight of the evidence.

18.    Defendant was denied due process of law when the court improperly imposed court costs.

19.    Defendant was denied due process of law when this case was improperly transferred from the original assigned judge to a new judge.

-11-

20.     Defendant was denied effective assistance of counsel.

The state filed a brief in response.[69] The Ohio appeals court overruled all twenty assignments of error and affirmed the decision of the trial court.[70]

Lewis then filed an application for reconsideration[71] and a motion for certification of conflict.[72]  The state file a responses in opposition.[73] The Ohio appeals court overruled both motions on October 9, 2014.[74]

## 2.     *The Supreme Court of Ohio*

Lewis, through counsel, thereupon filed a timely[75] notice of appeal[76] with the Ohio Supreme Court.   In his brief in support of jurisdiction, he raised thirteen propositions of law:

1.     A defendant has been denied his Sixth Amendment right to counsel
       when a court refuses to allow court-appointed counsel to withdraw

---

[69] *Id.* at 73.

[70] *Id.* at 120.

[71] *Id*. at 173.

[72] *Id*. at 182.

[73] *Id*. at 187, 191.

[74] *Id*. at 196.

[75] *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case). Lewis filed his notice of appeal on November 17, 2014, which was within the 45 days of the court of appeals entry dated October 19, 2014.  Thus, his appeal is timely.

[76] *Id*. at 201.

because of a breakdown in the attorney-client relationship as there were irreconcilable differences between counsel and defendant.

2. A defendant has been denied due process of law when a court amends an indictment over defense objection without resubmission to a grand jury.

3. A defendant has been denied due process of law when a court instructed jurors that a meeting between defendant and an alleged victim gave rise to an inference of consciousness of guilt.

4. A defendant has been denied due process of law when a court improperly singles out in identifying the "one witness" rule.

5. A defendant has been denied due process of law when a court improperly references defendant as an accomplice of another defendant on trial.

6. Defendant was denied due process of law when the court lessened the burden of proof by instructing the jury of using the gist in the offense language.

7. A defendant has been denied due process of law when the court fails to inform the jury that it must unanimously agree on a single theory in order to find the defendant guilty.

8. A defendant has been denied due process of law and subjected to unconstitutional multiple punishments when consecutive sentences were imposed.

9. A defendant has been denied due process of law when the court rotely recites the statutory criteria for imposing consecutive sentences.

10. A defendant has been denied due process of law and subjected to unconstitutional multiple punishments when he was sentence [sic] on two firearm specifications arising out of same transactions.

11. A defendant has been denied due process of law and equal protection of law when he received a greater sentence than a jointly tried co-defendant.

-13-

12.     A defendant was subjected to unconstitutional multiple punishments where the court failed to merge all offenses into a single offense based upon the same transaction.

13.     A defendant is denied his Sixth Amendment right to effective assistance of counsel where he has been prejudiced through errors and omissions by counsel.[77]

The State filed a waiver of memorandum of response.[78] On April 8, 2015, the Ohio Supreme Court declined to accept jurisdiction of Lewis's appeal under S.Ct.Prac. R. 7.08(B)(4).[79]

**C.      Petition for writ of habeas corpus**

On March 25, 2016, Lewis, *pro se*, timely filed[80] a federal petition for habeas relief.[81]

As noted above, he raises eleven grounds for relief:

| | |
|---|---|
| **GROUND ONE:** | Sixth Amendment |
| Supporting Facts: | Petitioner was denied his Sixth Amendment right to counsel when the court refused to allow his court appointed counsel to withdraw because of a breakdown in attorney client relationship and because irreconcilable differences between counsel and petitioner. |

---

[77] *Id*. at 204-05.

[78] *Id*. at 281.

[79] *Id*. at 282.

[80] The present petition for federal habeas relief was filed on March 25, 2016. ECF # 1.  As such, it was filed within one year of the conclusion of Lewis's direct appeal in the Ohio courts and so is timely under 28 U.S.C. § 2254(d)(1).

[81] ECF # 1.

**GROUND TWO:**           Sixth and Fourteenth Amendments

Supporting Facts:          Petitioner was denied due process of law and his
                           rights under the Sixth and Fourteenth
                           Amendments when the trial court amended the
                           indictment over defense objection without
                           resubmission of the case to a grand jury.

**GROUND THREE:**         Fourteenth Amendment

Supporting Facts:          Petitioner was denied due process of law when
                           the trial court instructed the jury that a meeting
                           between the petitioner and an alleged victim gave
                           rise to an inference of consciousness of guilt.

**GROUND FOUR:**          Fourteenth Amendment

Supporting Facts:          Petitioner was denied due process of law when
                           the trial court improperly singled out petitioner in
                           identifying a purported "one witness" rule.
                           Moreover, the trial court improperly referenced
                           defendant as an accomplice of another defendant
                           at trial.

**GROUND FIVE:**          Fourteenth Amendment

Supporting Facts:          Petitioner was denied due process of law when
                           the trial court lessened the burden of proof by
                           instructing the jury using the "gist" of the offense
                           language.

**GROUND SIX:**           Sixth and Fourteenth Amendments

Supporting Facts:          Petitioner was denied due process of law when
                           the trial court failed to inform the jury that it must
                           unanimously agree on a single theory in order to
                           convict a petitioner.

-15-

**GROUND SEVEN:**      Fifth, Sixth, and Fourteenth Amendments

Supporting Facts:      Petitioner was denied due process of law when subjected to unconstitutional multiple punishments when consecutive sentences were imposed by the trial court. Moreover, due process of law was violated when the trial court, by rote recitation, merely repeated the statutory criteria for imposing a consecutive sentence.

**GROUND EIGHT:**      Fifth, Sixth, and Fourteenth Amendments

Supporting Facts:      Petitioner was subjected to multiple punishments and denied due process of law when he was sentenced on two firearm specifications arising out of a single transaction.

**GROUND NINE:**      Sixth and Fourteenth Amendments

Supporting Facts:      Petitioner was denied due process of law and equal protection of the law when he received a greater sentence that of a jointly tried co-defender who was a principle offender.

**GROUND TEN:**      Fifth, Sixth, and Fourteenth Amendment

Supporting Facts:      Petitioner was subjected to unconstitutional multiple punishments when the trial court failed to merge all offenses into a single offense based upon a single same transaction.

**GROUND ELEVEN:**      Sixth Amendment

Supporting Facts:      Petitioner was denied effective assistance of counsel at trial where, through errors and omissions by trial counsel he was prejudiced and failed to receive a fair trial.[82]

---

[82] ECF #1 at 5-21.

# Analysis

**A.**     **Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.     There is no dispute that Lewis is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[83]

2.     There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[84]

3.     In addition, my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[85]

4.     Moreover, subject to the arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[86]

5.     Finally, Lewis is represented by counsel and has not requested an evidentiary hearing to develop the factual bases of his claims.[87]

---

[83] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[84] 28 U.S.C. § 2254(d)(1);  *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[85] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[86] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[87] 28 U.S.C. § 2254(e)(2).

**B.     Legal Standards**

*1.     AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[88] codified

at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas

corpus.[89]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect

to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established [f]ederal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the [s]tate court proceeding.[90]

The Supreme Court teaches that this standard for review is indeed both "highly deferential"

to state court determinations,[91] and  "difficult to meet,"[92] thus, preventing petitioner and

federal court alike "from using federal habeas corpus review as a vehicle to second-guess the

reasonable decisions of state courts."[93]

---

[88] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[89]  *See* 28 U.S.C. § 2254 (2012).

[90]  28 U.S.C. § 2254(d) (2012).

[91] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[92]  *Id.* (citation omitted).

[93] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

-18-

a.    *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[94]  In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[95]  (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[96] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[97]  A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[98]  The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[99]  Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[100]  When no such Supreme Court holding exists the federal habeas court must deny the petition.

---

[94] *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[95]  *Brumfield v. Cain*, 135 S.Ct. 2269, 2293 (2015).

[96]  *Id.*

[97]  *Id.*

[98]  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[99]  *Id.*

[100]  *See id.*

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[101]  Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[102]  A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[103]  To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[104]  Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

b.      *"Unreasonable determination" of the facts*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[105]  Under § 2254(e)(1), "a

---

[101]  *White v. Woodall*, 134 S.Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

[102]  *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003).

[103]  *Id.*

[104]  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

[105]  *Brumfield*, 135 S.Ct. at 2277.

-20-

determination of a factual issue made by a [s]tate court shall be presumed to be correct."[106]

A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[107] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review"or "by definition preclude relief,"[108] it is indeed a difficult standard to meet. "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judges."[109]

### 2.    *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[110] Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[111] In such circumstances, a claim for federal habeas

---

[106] 28 U.S.C. § 2254(e)(1) (2012).

[107] *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010).

[108] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

[109] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

[110] 28 U.S.C. § 2254(a).

[111] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[112]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[113] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness"of a trial.[114] Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[115]

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[116] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[117] and may not second-guess a state court's interpretation of its own procedural rules.[118] Further, while in general distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[119] the Sixth Circuit has recognized that

_____

[112] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[113] *Estelle*, 502 U.S. at 67-68.

[114] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[115] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[116] *Id.*

[117] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[118] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[119] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

"'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[120]

### 3.    Ineffective assistance of counsel

In *Higgins v. Renico*,[121] the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[122]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[123]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test.  It explained seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

_____

[120] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[121] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[122] *Strickland v. Washington*, 466 U.S. 668 (1984).

[123] *Higgins*, 470 F.3d at 631.

-23-

"Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible options."  Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference.  Indeed, such strategic choices are virtually unchallengeable.  As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

> Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[124]

The clearly established federal law of establishing prejudice from deficient

performance of counsel was stated by the *Higgins* court as follows:

> Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice.  In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings."  Indeed, "[v]irtually every act or omission of counsel would meet that test, and

---

[124] *Id.* at 631-32 (internal citations omitted).

-24-

not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt." "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[125]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[126]

## C.  Application of standards

*1.  Ground One*

In the first ground for relief Lewis asserts that he was denied effective counsel at trial because the trial court declined to permit his court-appointed counsel to withdraw from the case because of a breakdown in the attorney-client relationship.[127]

---

[125] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[126] *Id.* at 631 n.3.

[127] ECF # 1 at 5.

Lewis argued in state court a related issue - that the trial court should have granted Lewis's *pro se* motion to obtain new counsel, either by permitting him to retain counsel or to have a new counsel appointed for him.[128]  The state appeals court considered this to be an interrelated issue with trial counsel's motion to withdraw, and so considered the issues together.[129]  Although Lewis here specifically states that Ground One arises from the trial court's refusal to permit his attorney to withdraw, his arguments also address the combined issues of "not only petitioner's request to hire counsel, but also that of his court-appointed counsel's [request to withdraw from the case]."[130]  Moreover, in his traverse Lewis also asserts that the state appeals court made an unreasonable finding of the relevant facts concerning this claim.[131]

The state appeals court began its analysis by noting that both motions - counsel's and Lewis's - were based on a stated difficulty in communication.[132]  Specifically, counsel stated that he "not only found it difficult to physically locate [Lewis] to schedule meeting, but [that]

---

[128] See, ECF # 9, Attachment 1 at 19.

[129] *Id.* at 128.

[130] ECF # 10 at 2.

[131] *Id.* at 2, 5. Although Lewis twice asserts that the state appellate court made "an unreasonable determination of undisputed facts,"it is unclear what this means, or more basically, what facts are allegedly "unreasonably determined"? Lewis does not detail the facts he refers to, nor explain how the appeals court allegedly "unreasonably determined" something else. In such a situation, there is no basis for this Court to evaluate any purported error in the state court's fact finding.

[132] ECF 9, Attachment 1 at 129.

he could not get [Lewis] to cooperate in the formulation of trial strategy."[133] Similarly, Lewis asserted that "trial counsel had failed to keep him properly informed as to when he was required to appear before the court" and that he "did not have full confidence in his counsel because counsel failed to understand the significance of a misstatement in a police report."[134]

The court then stated that in Ohio law, an appeals court reviewing a decision on a motion for a change in appointed counsel may reverse the lower court only upon a showing of abuse of discretion.[135]  It further noted that in evaluating such a motion the trial court will allow a defendant to  discharge a court-appointed attorney only if he can show the attorney-client relationship has deteriorated to such an extent as to "jeopardize the defendant's right to effective assistance of counsel."[136]  The Ohio court observed that courts have recognized three situations that warrant the discharge of court-appointed counsel: (1) a conflict of interest, (2) a complete breakdown of communications, and (3) an irreconcilable conflict that could cause an unjust result.[137]  In all such cases, the appeals courts found that substitution of counsel should be allowed only if "extreme circumstances exist."[138]

---

[133] *Id.*

[134] *Id.*

[135] *Id.* (citation omitted).

[136] *Id.* at 130 (internal quotation and citation omitted).

[137] *Id.* (citation omitted).

[138] *Id.* (citation omitted).

The court then focused on the situation of an alleged breakdown of the attorney-client relationship because of a lack of communication.[139]  The court observed that the Sixth Amendment does not guarantee that a defendant will have "rapport" with his attorney.[140]  Indeed, the existence of hostility or even a personal conflict does not constitute a breakdown of communications so long as the attorney is nonetheless able to prepare and present a competent defense.[141]  Moreover, any lack of communication must be "permanent" to qualify as grounds for using a lack of communication as a basis for altering a choice of counsel.[142]  Finally, the Ohio court found that a mere dispute over trial tactics or strategy is not sufficient to create the requisite breakdown.[143]

Having set forth the controlling standards, the Ohio court then analyzed the relevant factual elements. Initially, the court noted that Lewis had first sought to replace his court-appointed counsel with his own private attorney, with Lewis representing to the trial judge that he had already contacted a specific attorney and had a preliminary conversation about the case.[144]  But, the appeals court stated, even though Lewis had been free on bond for three months before the start of trial, and so had considerable time to finalize new representation,

---

[139] *Id.*

[140] *Id.* (citation omitted).

[141] *Id.* (citation omitted).

[142] *Id.* at 130-131 (citation omitted).

[143] *Id.* at 131 (citation omitted).

[144] *Id.*

on the first day of trial no new counsel appeared on behalf of Lewis.[145]  In such a situation, the appeals court concluded that "the trial court could justifiably find that [Lewis] was still indigent and had not been able to accumulate enough funding to hire his own counsel."[146]

As to the alleged breakdown of communications between Lewis and his appointed counsel, the Ohio appeals court found that although Lewis had argued that he was not informed by counsel of upcoming events in his case, counsel had testified that he had tried reaching Lewis at two different phone numbers, leaving messages for him, but Lewis was "always extremely difficult to contact."[147]  Trial counsel also testified that whenever he was able to meet with Lewis, Lewis was "argumentative" and "would not accept any legal advice."[148]

On this record the appellate court found that "the lack of communication between the attorney and his client was solely attributable to [Lewis]," and that Lewis used the pretext of problems with his attorney simply "to obtain a third continuance of his trial."[149] Moreover, the appeals court concluded that the single instance offered by Lewis to support the alleged inadequacy of counsel's representation reflected an admitted oversight by counsel

---

[145] *Id.*

[146] *Id.*

[147] *Id.*

[148] *Id.* at 131-132.

[149] *Id.* at 132.

in reviewing the details of the police report, but that oversight had no effect on the trial proceedings.[150]

Finally, as to whether the trial court denied Lewis due process by failing to hold a hearing on counsel's motion to withdraw, the appellate court determined that any error here was not prejudicial because although no hearing was held at his time, the trial court did conduct a full hearing on the issue of Lewis's representation at the beginning of the trial when considering Lewis's *pro se* motion to obtain new counsel.[151]  At this hearing, the Ohio court observed, both Lewis and his appointed counsel fully testified as to "the grounds for their respective motions."[152]

Thus, the appeals court concluded, the record did not indicate the existence of "an extreme situation" where Lewis and his court-appointed counsel "were no longer able to communicate as a result of a serious disagreement regarding the type of defense which should be used at trial."[153]  Instead, as noted above, the court found that any problems with communication were "due to [Lewis's] choice not to cooperate with his court-appointed

---

[150] *Id.*

[151] *Id.*

[152] *Id.*

[153] *Id.* at 133.

counsel."[154]  In that context, the court further found that the trial court did not abuse its discretion in refusing to allow Lewis to discharge his attorney and obtain new counsel.[155]

The Sixth Circuit has stated that a motion for a new court-appointed attorney based on a defendant's dissatisfaction with existing counsel is "addressed to the sound discretion of the trial court."[156]  The reviewing court must keep in mind that "the right to counsel of choice, unlike the right to counsel ... is not absolute.  An indigent defendant has no right to have a particular counsel represent him," and so a defendant's right to court-appointed counsel "does not carry with it the right to select a particular attorney."[157]  Indeed, the Sixth Circuit has emphasized that while the Sixth Amendment guarantees a defendant the effective assistance of counsel, "[t]his right has not been extended to allow an indigent defendant the counsel of his choice."[158]  In 2006 the United States Supreme Court also recognized that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."[159]

Because an indigent defendant has no absolute right to select the particular attorney who will represent him, to obtain a substitution of appointed counsel a defendant must show

---

[154] *Id.*

[155] *Id.*

[156] *U.S. v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004); *Williams v. Bunting*, 2015 WL 1505699, at *3 (N.D. Ohio April 1, 2015)(citing *Trujillo*, 376 F.3d at 606).

[157] *U.S. v. Ilses*, 906 F.2d 1122, 1130-1131 (6th Cir. 1990)(internal citations omitted);

[158] *Tolliver v. Dallman,* 57 F.3d 1070, *2 (6th Cir. 1995)(citing *Ilses*).

[159] *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

good cause for the substitution.[160] Courts have determined that the trial court must make some sort of inquiry into a defendant's complaints if there has been a motion to substitute counsel.[161] That said, however, courts have also determined that the Sixth Amendment does not guarantee a defendant a "meaningful relationship" with his attorney.[162] Therefore, as noted above, a decision as to whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court.[163]

With that in mind, a court considering a request for substitution of counsel should consider: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.[164] Further, consideration of such a motion requires a balancing of the accused's right to counsel of his choice and public's interest in the prompt administration of justice.[165]

A defendant may not use the right to counsel of his choice as a means to unreasonably delay trial.[166] A denial of a continuance rises to a constitutional violation only when the

---

[160] *Tolliver*, 57 F.3d at *2.

[161] *Id.*

[162] *Williams,* 2015 WL 1505699, at *12 (internal citation and quotation omitted).

[163] *Id.* (citation omitted).

[164] *Trujillo*, 378 F.3d at 606 (citation omitted).

[165] *Williams*, 2015 WL 1505699, at *12 (citations omitted).

[166] *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981).

denial reflects an "unreasoning and arbitrary" insistence upon "expeditiousness in the face of a justifiable request for a delay."[167]  To prevail on a constitutional claim a defendant must show that the denial of the continuance actually prejudiced his defense.[168]

Moreover, to the extent a habeas petitioner seeks to base a claim about the trial court's denial of a request for appointment of new counsel on a purported violation of Ohio law, such portion of the federal claim is a non-cognizable state law claim.[169] And to the extent that the petitioner seeks to assert, as a matter of federal law, that the state court's decision denied him due process, that claim must first have been fairly presented to the state court and now demonstrate that the state court decision amounted to a denial of fundamental fairness.[170] The Supreme Court has held beyond the specific guarantees enumerated "the Due Process Clause has limited operation," and so has defined fundamental fairness "very narrowly."[171]  Essentially, fundamental fairness is implicated only when the complained of action violates "those fundamental conceptions of justice which lie at the base of our civil and political institutions."[172]

_____

[167] *Burton v. Renico,* 391 F.3d 764, 772 (6th Cir. 2004), citing *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

[168] *Id.* (citation omitted).

[169] *Williams,* 2015 WL 1505699, at * 10.

[170] *Id.*

[171] *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[172] *Id.* at 353 (internal quotation and citation omitted).

Here, Lewis has not established that the state court decision is contrary to, or an unreasonable application of, clearly established federal law.  As the state court record shows, Lewis requested a continuance and the substitution of counsel just before trial was to begin, and after the trial had already been once continued.[173]  The trial court at that point investigated Lewis's complaint, which review conformed to the requirements of the law as set forth above. As a result of that review, the trial court found, also in conformity with the relevant law, that there was not a total breakdown of attorney-client communications that would prejudice the defense, and further determined that the public's interest in the efficient administration of justice weighed against Lewis's request.  The state appeals court, in reviewing that decision, also properly observed that the decision of the trial court was not an abuse of its discretion, which is a matter of state law that Lewis cannot here contest.[174]

Moreover, to the degree that Lewis here argues that the trial court judge improperly prevented him from representing himself,[175] the state appeals court found that despite Lewis's contention that he had contacted a specific attorney during the three months before trial that he was free on bond, no retained attorney appeared for Lewis on the first scheduled day of trial.[176]  While it is true that a criminal defendant who is financially able to retain his own

---

[173] ECF # 9 at 23 (citing record).

[174] *Stephens v. O'Dea*, 9 F.3d 109, at * 4 (6th Cir. 1993)(citation omitted).

[175] See, ECF # 10 at 7-8.

[176] ECF # 9, Attachment at 12.

counsel should be afforded a "fair opportunity" to secure that representation,[177] it is also true that a defendant's "fair opportunity" to secure his own counsel has limits.[178]

The right to counsel of choice "may not be used to unreasonably delay trial."[179] A situation where purportedly retained counsel does not appear at a scheduled hearing or trial, and the defendant had notice of the date and prior opportunity to retain counsel of choice , it is therefore reasonable for the trial court to conclude that the defendant is indigent.[180]  In that situation a defendant does not state a good cause for a substitution of counsel, and the trial court does not abuse its discretion in not allowing such a substitution.[181]

Finally, Lewis has not established that any purported procedural defect amounted to a denial of fundamental fairness.  As the state appeals court noted, the trial court did not abuse its discretion by not conducting another full hearing on counsel's motion to withdraw after having already made an on-the-record inquiry into the situation as a result of Lewis's earlier motion.

Accordingly, based on the above record and the applicable law stated here, the decision of the state appeals court as to this ground for relief was not an unreasonable application of clearly established federal law as to those portions of this ground cognizable

---

[177] *Powell v. Alabama,* 287 U.S. 45, 53 (1932).

[178] *Luis v. United States,* __ U.S. __, 136 S.Ct. 1083, 1089 (2016).

[179] *Colon v. Rogers*, 187 F.3d 365, at *7 (6th Cir. 1999).

[180] *Id*. at * 8.

[181] *Id*.

here.  In addition, to the extent that Lewis raises non-cognizable issues of state law as to this ground, the ground should be dismissed.

2.    *Ground Two*

In his second ground for relied Lewis asserts that he was denied due process of law when the trial court amended the indictment over the defenses objection without resubmission of the case to the grand jury.  To the extent that Lewis' claim raises a state law claim, it does not present a cognizable ground for habeas relief.  To the extent that any federal constitutional rights are implicated, the state appellate court reasonably rejected Lewis' claim under the clearly established Supreme Court precedent:

> {¶ 56} Under his third assignment, appellant maintains the trial court improperly amended the indictment by not instructing the jury on the third count of the indictment. He contends that the lack of reference to the third count rendered the remainder of the jury instructions so confusing that he was denied a fair trial.

> {¶ 57} Prior to trial, the state orally moved to dismiss the third count of the indictment against appellant, and the trial court granted this motion. As a result, the remaining counts in appellant's indictment corresponded to the charges in the codefendant's indictment. Therefore, there is no merit to appellant's contention that the jury instructions were confusing to the jury, or that the trial court improperly amended the indictment.[182]

To the extent that the state appellate court decision is based on state law, this Court must defer to the state appellate court's interpretation of Ohio law, and Lewis is not entitled to federal habeas relief based on a state law claim.  As to any federal constitutional right

---

[182] ECF # 9, Attachment 1 at 133-134.

implications, Lewis has not established that the state appellate court's decision is contrary to or involved an unreasonable application of clearly established Supreme Court precedent.

The Supreme Court has stated that "the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings."[183]  The sole constitutional issue is whether an indictment provides the defendant with sufficient information about the charged offense to enable the defendant to defend himself against the accusations and "beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."[184] "Any other deficiencies in the indictment alleged by the petitioner are solely matters of state law and are not cognizable in a federal habeas proceeding.[185]  Even an "indictment which fairly, but imperfectly, informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."[186]

In this case, Lewis received proper notice of the charges and, even with the amendment, the indictment enabled him to adequately prepare a defense and protect himself against future prosecution for the same offenses, thereby satisfying any due process concerns. The indictment cited the pertinent Ohio Revised Code statutes and tracked the corresponding statutory language.[187]

---

[183] *Knewal v. Egan*, 268 U.S. 442, 446 (1925).

[184] *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

[185] *Mirn v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986).

[186] *Id.* at 639 (internal citations omitted).

[187] ECF #9, Attachment 1 at 1.

In addition, fundamental fairness under the Due Process Clause is judged as to whether "the action complained of violates 'fundamental conceptions of justice which lie at, the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'"[188] The Supreme Court has "defined the category of [such trial court] infractions that violate 'fundamental fairness' very narrowly" and Lewis has not met that extremely high standard.[189]

Accordingly, Lewis is not entitled to federal habeas relief on his due process claim and his second ground for relief should be denied.

3.      *Grounds Three, Four, Five, and Six*

Lewis' third, fourth and sixth habeas relief grounds can be resolved in a similar manner and will be addressed together.   If Lewis did not object to a specific jury instruction at trial, his state court procedural default waived all claims pertaining to that instruction.   To the extent that Lewis' claims raise state law claims, they do not present cognizable grounds for federal habeas relief.   To the extent that any federal constitutional rights are implicated, the state appellate court reasonably rejected Lewis' claims in its decision:

> {¶ 59} Under his next assignment, appellant argues that the trial court erred in allowing Shaquetta to testify as to the encounter she had with appellant approximately three weeks prior to trial. As previously noted, Shaquetta testified that, in confronting her alone in a local bar, appellant offered to pay her money to dropped the charges in the pending criminal case. Although appellant's trial counsel objected to the testimony, the trial court

---

[188] Dowling v. United States, 493 U.S. 342, 352 (1990).

[189] *Id.*

-38-

admitted it as evidence of a guilty conscious. Appellant contends that her testimony should have been excluded as evidence of a prior bad act under Evid.R. 404(B).

{¶ 60} Under Ohio law, it is well-settled that "[e]vidence of conduct designed to impede or prevent a witness from testifying is admissible as showing consciousness of guilt." *State v. Williams,* 79 Ohio St.3d 1, 11, 679 N.E.2d 646, 1997–Ohio–407 (1997). Appellant's conduct shows consciousness of guilt.

{¶ 61} As the trial court acted in compliance with the governing case law when it allowed Shaquetta's testimony and then instructed as to the relevancy of the evidence, appellant's fourth assignment is without merit.

{¶ 62} Under his fifth assignment, appellant asserts that he was denied a fair trial because, in instructing the jury, the trial court placed too much emphasis upon a specific rule governing the determination of witness credibility. That is, he argues that the court should not have expressly told the jury that proof of a specific fact can be based upon the testimony of one witness. It is appellant's position that, because his conviction was predicated solely upon the testimony of Russell Perry, the "one witness" instruction had the effect of placing undue importance on Russell's testimony.

{¶ 63} As the state correctly notes, the instruction given by the trial court was consistent with the standard instruction for the "one witness" rule. *See Ohio Jury Instructions,* Section CR409.05, at 73, (2012). Furthermore, in providing the disputed instruction, the trial court did not make any express reference to Russell or Shaquetta, thereby indicating that the rule could be applied to either. Rather, the rule was set forth in a group of standard instructions regarding the role of the jury in judging witness credibility.

{¶ 64} Except for Shaquetta's testimony concerning appellant's alleged offer to pay her and Russell off, the state's case against appellant was predicated entirely upon Russell's testimony. Thus, the disputed instruction was appropriate; i.e., the jury needed to know that a finding of guilt could be based upon the

-39-

testimony of one witness. In addition, the instruction was not stated in such way as to give it any greater weight than the other "credibility" instructions.

{¶ 65} Therefore, appellant's fifth assignment is not well taken.

{¶ 66} Under his sixth assignment, appellant maintains that he was denied a fair trial in light of certain statements the trial court made to the jury as part of its preliminary instructions regarding the consideration of the evidence. Specifically, he notes that the court informed the jury that even if an accomplice did not possess a firearm during the execution of a crime, he could still be found guilty of a firearm specification if the main offender had a firearm. Appellant asserts this instruction placed too much emphasis on his role as an accomplice in the underlying incident.

{¶ 67} The decision to employ a particular jury instruction in a given criminal case lies within the sound discretion of the trial court, and cannot form the grounds to reverse a conviction unless an abuse of discretion took place. *State v. Nichols,* 11th Dist. Lake No.2005–L–017, 2006–Ohio–2934, ¶ 28. As a general proposition, a jury instruction is proper if it sets forth a plain and unambiguous statement of the law that is pertinent to the case in light of the pleadings and the evidence presented at trial. *Id.* at ¶ 30.

{¶ 68} The disputed instruction concerning complicity as to a firearm specification was clearly relevant to appellant's role in the home invasion and set forth a proper statement of the governing case law. In *State v. Fitzgerald,* 11th Dist. Lake No.2003–L084, 2004–Ohio–6173, ¶ 62, fn. 3, this court held that "where the state proves beyond a reasonable doubt that a party acted in complicity to aggravated robbery and the principal offenders possessed firearms, that party may be 'prosecuted and punished as if he were a principal offender.' " To the extent that it was necessary for the jury to know that appellant could be found guilty under the firearm specifications even if he did not have actual possession of the handgun during the incident, the trial court's preliminary "complicity" instruction was a correct

-40-

statement of law. Accordingly, appellant's sixth assignment is without merit.

{¶ 69} Under his seventh assignment, appellant submits that the trial court erred in instructing the jury on the mens rea of "purposefully." This argument is based upon the following sentence from the jury instructions:

{¶ 70} "When the central idea, essence, or gist of the offense is a prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct."

{¶ 71} Citing the "gist of the offense" language, appellant asserts the instruction was needlessly confusing and had the effect of lessening the burden of proof the state had to carry in order to establish the mens rea.

{¶ 72} In support of his argument, appellant relies upon the decision of the Ohio Supreme Court in *State v. Wilson,* 74 Ohio St.3d 381, 659 N.E.2d 292, 1996–Ohio–103 (1996). In *Wilson,* the disputed instruction provided:

{¶ 73} " 'A person acts purposely, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, if it is his specific intention to engage in conduct of that nature.' " *Id.* at 392, 659 N.E.2d 292.

{¶ 74} In analyzing the foregoing instruction, the *Wilson* court first concluded that the inclusion of the "gist of the offense" language did create some confusion regarding what constituted "purposeful" behavior. *Id., at 393, 659 N.E.2d 292.* However, upon reviewing the "gist" language in the context of the entire instruction, the *Wilson* court held that no plain error had occurred because the entire instruction had been adequate to properly define the element of specific intent. *Id.*

{¶ 75} In applying the *Wilson* precedent, the Eighth Appellate District has held that the trial court's use of the "gist of the

offense" language does not have the effect of diluting the state's burden of proof when the term "purposefully" is otherwise properly defined in the instructions. *State v. Hamilton,* 8th Dist. Cuyahoga No 86520, 2006–Ohio–1949, ¶ 46.

{¶ 76} In this case, the trial court used the "gist" language twice in its instructions to the jury. In the first instance, the "gist" language was included as part of the following discussion of the definition of purposeful behavior:

{¶ 77} "A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the Defendant a specific intention to commit a criminal offense in the occupied structure. When the central idea, essence, or gist of the offense is a prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct. Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing."

{¶ 78} When the trial court used the "gist" language the second time, it was included in a discussion which was virtually identical to the foregoing quote.

{¶ 79} The term "purposely" is defined in R.C 2901.22(A):

{¶ 80} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

{¶ 81} When considered as a whole, the definition of the term "purposely" in the trial court's jury instructions was sufficiently consistent with the statutory definition to adequately instruct the jury. Therefore, the use of the "gist" language did not have the effect of diluting the state's burden of proof on the "purposely"

element. *Hamilton.* For this reason, appellant's seventh assignment is not well taken.

{¶ 82} Under his next assignment, appellant maintains that the trial court erred when it failed to instruct the jury that it was required to reach a unanimous verdict as to whether he had been the principal offender or an aider and abettor in the commission of the various offenses. He states that complicity constitutes a separate theory regarding the role he played in the incident, and that the jury had to agree as to the nature of that role before he could be found guilty.

{¶ 83} Under Ohio law, the legal distinction between principal offender and aider and abettor is not viewed as significant. R.C. 2923.03(F) provides that a person who is guilty of complicity "shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offender."

{¶ 84} In light of the foregoing, the failure to require the jury to distinguish on the verdict forms whether the defendant was found guilty as an aider and abettor is not a plain error warranting the reversal of a conviction. *See State v. Beshara,* 7th Dist. Mahoning No. 07 MA 37, 2009–Ohio–6529, ¶ 77. The same logic would likewise apply to any alleged error in the trial court's instructions as to the need for a unanimous verdict regarding the role of appellant in the commission of the underlying offenses.

{¶ 85} In this case, appellant's trial counsel never objected to the trial court's jury instructions concerning whether he had acted as an aider and abettor; hence, a plain error can only be found when, inter alia, the outcome of the trial was adversely affected. *Id.* at ¶ 75. Here, the state's evidence was overwhelming that appellant had acted as a principal offender in relation to the offenses against Russell Perry, and an aider and abettor as to those offenses against Shaquetta Page. That is, if the jury believed the testimony of Russell and Shaquetta, there would be no factual dispute concerning the role appellant played in each of the three remaining charges. Therefore, since appellant was

-43-

> not prejudiced by any alleged error pertaining to the complicity jury instructions, his eighth assignment of error lacks merit.[190]

Ohio has firmly established and regularly enforced "contemporaneous objection rule" that an appellant who fails to object waives later review of an issue unless he shows plain error.[191]   Ohio's contemporaneous objection rule is an adequate and independent state ground for procedural default to preclude federal habeas review and relief.[192]   The Sixth Circuit has held that for habeas review purposes, a state appellate court's plain error review is enforcement of a procedural default, not a waiver of the procedural rule.[193]

Thus, Lewis waived substantive habeas review on all jury instructions that he did not object to during trial proceedings, and those which the state appellate court examined under plain error review.   The state appellate court's plain error review constituted enforcement of Ohio's contemporaneous objection rule and is a valid reason to preclude §2254 habeas review and relief because Lewis has not established cause and actual prejudice, or a manifest injustice to excuse his procedural default.[194]

---

[190] ECF #9, Attachment 1 at 134-40.

[191] *Williams v. Bagley*, 380 F.3d 932 (6th Cir. 2004), citing *State v. Smith*, 89 Ohio St.3d 323, 2000-Ohio-166, 731 N.E. 2d 645.

[192] *Scott v. Mitchell*, 209 F.3d 854, 873 (6th Cir. 2000), *analyzing Maupin v. Smith*, 785 F.2d 135 (6 th Cir. 1986).

[193] *Williams*, 380 F.3d at 968; *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

[194] *See Maupin*, 785 F.2d 135.

-44-

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant relief."[195]  An alleged jury instruction error is not cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice, which requires a habeas petitioner to show "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."[196]

"The standard on habeas review us 'highly demanding' – erroneous jury instructions violate 'fundamental fairness' only in very narrow circumstances."[197]  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."[198]

Lewis has not rebutted by clear and convincing evidence the presumption of correctness afforded to the state appellate court's factual findings and this reviewing habeas Court must accept the state appellate court's factual findings and interpretation of Ohio law. Consequently, Lewis has not established an error, let alone an error that rendered his trial fundamentally unfair and violated his federal due process rights.  Accordingly, Lewis is not

---

[195] *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (internal citations omitted).

[196] *Cupp v. Naughten*, 414 U.S. 141, 147 (1973) (external citations omitted).

[197] *Weber v. Warden, Warren Correctional Institution*, 886 F. Supp.2d 749, 756 (S.D. Ohio 2012).

[198] *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)(footnote omitted).

entitled to federal habeas relief on his due process claims and his third, fourth, fifth, and sixth grounds for relief should be denied.

4.    *Grounds Seven, Eight, Nine, & Ten*

Lewis' seventh, eighth, ninth, and tenth grounds for relief can be resolved in a similar manner and will be addressed together.

To the extent that Lewis' claims raise state law claims, they do not present cognizable grounds for federal habeas relief.  To the extent that any federal constitutional rights are implicated, the appellate court reasonably rejected Lewis' claims:

> {¶ 86} Under his ninth assignment, appellant claims that the trial court's decision to impose consecutive prison terms in regard to the aggravated burglary count and the two aggravated robbery counts was contrary to law. Citing R.C. 2929.14(E), he asserts that the trial court only had the statutory authority to impose consecutive terms if he was convicted of a violent sex offense, a designated homicide, an assault, or a kidnaping offense. According to appellant, since aggravated burglary and aggravated robbery are not cited in R.C. 2929.14(E), he could only be required to serve concurrent terms.

> {¶ 87} In responding to this assignment, the state aptly notes that R.C. Chapter 2929 sets forth a number of different standards governing the imposition of consecutive terms by a trial court. The state further notes that the primary standard for consecutive terms is delineated in R.C.2929.14(C)(4):

> {¶ 88} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

-46-

{¶ 89} " * * *

{¶90} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶91} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 92} Although the trial court in this case did not expressly refer to the foregoing standard during the sentencing hearing, statements made by the court at that hearing plainly shows that the decision to impose consecutive prison terms was predicated upon R.C. 2929.14(C)(4). Specifically, after the trial court allowed appellant and the codefendant to address the issue of sentencing, it made the following findings as to both of them:

{¶ 93} "The Court determines that consecutive sentences are called for here, not only because of the firearm specifications, which are mandatory consecutive sentences, but also as to the underlying crimes. The Court believes that consecutive sentences are necessary to protect the public and punish the offenders. Consecutive sentences would not be disproportionate to the conduct and to the danger the offenders pose. The Court finds that the harm was so great or unusual that a single term does not adequately reflect the seriousness of the conduct and that the offenders' criminal history, particularly as to the Defendant Ricci Lewis shows that consecutive terms are needed to protect the public."

{¶ 94} The trial court clearly made the requisite findings to impose consecutive prison terms under R.C. 2929.14(C)(4). In contesting the legality of his sentence before this court, appellant has not challenged whether those findings were supported. Hence, since the decision to impose consecutive

sentences was made in accordance with the governing statutory law, appellant's ninth assignment lacks merit.

{¶ 95} Appellant's tenth assignment also raises a challenge to the imposition of consecutive prison terms on the remaining underlying offenses. He asserts that the trial court never made any specific factual findings that justified consecutive terms. Instead, according to him, the court merely made a rote statement of the statutory criteria without providing a substantive discussion.

{¶ 96} In making this argument, appellant does not reference the standard for the imposition of consecutive sentences under R.C. 2929.14(C)(4). Rather, his argument is predicated entirely upon the following statement of the trial court during the sentencing hearing:

{¶ 97} "The Court determines that there was a separate animus in the commission of the robbery and the burglary. The burglary could have been committed entirely without committing an aggravated robbery. And that once the individual invaded this household, forced their way in, they immediately took control of the situation by committing an aggravated robbery with firearms. *And that that's an additional reason why this Court believes consecutive sentences are absolutely necessary here.*" (Emphasis added.)

{¶ 98} As previously noted in our discussion of appellant's ninth assignment, as part of its sentencing analysis earlier in the sentencing hearing, the trial court had made express factual findings regarding the criteria for consecutive prison terms under R .C. 2929.14(C)(4). Thus, in making the italicized statement at the end of the foregoing quote, the court was not stating its entire justification for consecutive terms. Instead, as the court readily indicated, it was merely providing an additional reason in support of its decision on the "consecutive terms" issue.

{¶ 99} Taken as a whole, there is nothing to establish that the trial court failed to consider the governing statutory criteria prior to deciding to impose consecutive prison terms in relation to the

-48-

remaining aggravated burglary count and the two aggravated robbery counts. For this reason, appellant's tenth assignment does not have merit.

{¶ 100} Under his eleventh assignment, appellant submits that the trial court erred in imposing two three-year terms under two of the firearm specifications. According to him, the statutory provision governing the imposition of sentence for such specifications only allowed the trial court to order one three-year term under one specification. Citing R.C. 2929.14(B)(1)(b), he argues that multiple three-year terms are impermissible when all of the firearm specifications were committed as part of one continuous transaction.

{¶ 101} Each of the six firearm specifications against appellant was brought under R.C. 2941.415, and essentially alleged that a firearm had been displayed or brandished during the commission of underlying felony offense. R.C. 2929.14(B)(1)(a)(ii) provides that a three-year term can be imposed when the criminal defendant is found guilty of a firearm specification under R.C. 2941 .415.

{¶ 102} As to the imposition of multiple three-year terms for firearm specifications, R.C. 2929.14(B)(1)(b) generally states that multiple terms are not permissible when the underlying felonies were "committed as part of the same act or transaction." However, R.C. 2929.14(B)(1)b) also expressly provides that an exception to the foregoing general rule is set forth in division (B)(1)(g) of the statute:

{¶ 103} "(g) If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies is aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its

discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications."

{¶ 104} Appellant was convicted of two counts of aggravated robbery, one as to Russell and one as to Shaquetta. Given that aggravated robbery is one of the specific felonies listed in R.C. 2929.14(B)(1)(g), the "same act or transaction" rule under division (B)(1)(b) was inapplicable in this instance. Instead, the trial court was required to follow the exception in division (B)(1)(g), which expressly mandates that a separate prison term be imposed for each of the two most serious firearm specifications. To this extent, because each of the two remaining aggravated robbery counts contained firearm specifications of which appellant was convicted, the trial court simply had no discretion in imposing two three-year terms for the specifications. Therefore, appellant's eleventh assignment is not well-taken.

{¶ 105} Under his twelfth assignment, appellant claims that the trial court violated his constitutional right to equal protection by imposing an aggregate sentence which is longer than the total sentence given to his co-defendant, Carvell Fomby. Specifically, he notes that he was ordered to serve an aggregate term of twenty years, while Fomby is only required to serve seventeen years. Appellant submits that this result was unjust because it was Fomby who wielded the firearm during the alleged incident.

{¶ 106} R.C. 2929.11(B) expressly requires that Ohio's sentencing guidelines are to be applied consistently by trial courts. In relation to the goal of consistency, "[w]e have held that sentencing consistency is not derived from the trial court's comparison of the current case to other sentences given to similar offenders for similar offenses. * * * Rather, it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency. * * * Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory factors and guidelines." *State v. Greitzer*, 11th Dist. Portage No.2006–P–0090, 2007–Ohio–6721, ¶ 24.

{¶ 107} In summarizing the guidelines for felony sentencing under Ohio's statutory scheme, this court has stated:

{¶ 108} "R.C. 2929.11(A) provides that a trial court that sentences an offender for a felony conviction must be guided by the 'overriding purposes of felony sentencing.' Those purposes are to 'protect the public from future crimes by the offender and others and to punish the offender.' R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. Finally, R.C. 2929.12 sets forth factors concerning the seriousness of the offense and recidivism factors." *State v. Cross,* 11th Dist. Lake No.2006–L–135, 2007–Ohio–3847, ¶ 23.

{¶ 109} The trial court's decision to give appellant a longer aggregate sentence was clearly based upon recidivism factors. During the sentencing hearing, the state established that appellant had a substantial criminal record which included more than ten previous convictions. Given that appellant's past record was significantly worse than that of the co-defendant, the trial court could reasonably conclude that appellant posed a greater risk to the general public, and thus should be incarcerated for a longer time period.

{¶ 110} Taken as a whole, the decision to impose three additional years of incarceration was predicated upon a proper application of the statutory sentencing factors. Therefore, since appellant's right to equal protection of the law was not violated, his twelfth assignment is not well-taken.

{¶ 111} Under his thirteenth assignment, appellant asserts that the trial court erred in not merging the two remaining counts of aggravated robbery into the sole remaining count of aggravated burglary. Without addressing the question of whether foregoing crimes are allied offenses of similar import, appellant maintains that separate sentences could not be imposed for all three remaining offenses because the evidence established that the

aggravated burglary and the two aggravated robberies were committed as part of one continuous criminal act.

{¶ 112} The legal effect of a defendant's conviction on multiple crimes is governed by R.C. 2941.25:

{¶ 113} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 114} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 115} In its most recent pronouncement on the "allied offenses" issue, a plurality of the Supreme Court of Ohio summarized its general application of R.C. 2941.25:

{¶ 116} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct. * * *. If the offenses correspond to such a degree that the conduct of the defendant constituting the commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶ 117} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' * * *.

{¶ 118} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶ 119} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according

-52-

to R .C. 2941.25(B), the offenses will not merge." (Citations omitted and emphasis sic.) *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010–Ohio–6314, ¶ 48–51.

{¶ 120} Although the foregoing analysis was only followed by a plurality of the Supreme Court, this court expressly adopted the *Johnson* analysis in *State v. Muncy,* 11th Dist. Ashtabula No.2011–A–0066, 2012–Ohio–2830.

{¶ 121} At the outset of our analysis in this case, it must be noted that appellant was only sentenced on the first, second and fourth counts of the indictment, as amended after the state dismissed the charge of complicity to aggravated robbery. Consistent with the trial court's instructions to the jury, the fourth count of the indictment charged appellant with aggravated robbery pertaining solely to Shaquetta. In contrast, the first and second counts of the indictment, under which appellant was charged with aggravated burglary and aggravated robbery, respectively, related solely to Russell.

{¶ 122} When the same offense is committed against different victims during the same course of conduct, there is a separate animus as to each victim; therefore, under such circumstances, the multiple offenses are not deemed "allied" for purposes of R.C. 2941.25, and a separate sentence can be imposed for each offense. *State v. Chaney,* 8th Dist. Cuyahoga No. 97872, 2012–Ohio–4933, ¶ 26–28. In light of this, the aggravated robbery count as to Shaquetta could never be merged with either of the remaining two counts as to Russell. Accordingly, our analysis under this assignment must focus upon whether the trial court should have merged the two "Russell" counts together. As part of its oral discussion during the sentencing hearing, the trial court determined that the aggravated burglary charge under count one could not be merged with the remaining aggravated robbery count as to Russell because appellant had a separate animus for each offense.

{¶ 123} Under the first count, appellant was charged with aggravated burglary under R.C. 2911.11(A)(1), which provides:

{¶ 124} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:

{¶ 125} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another; * * *."

{¶ 126} Under the second count of the indictment, appellant was charged with aggravated robbery pursuant to R.C. 2911.01(A)(1), which states:

{¶ 127} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 128} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *."

{¶ 129} It is possible to commit aggravated burglary and aggravated robbery with the same conduct. However, a trial court can still impose separate prison terms for the two offenses if, pursuant to R.C. 2941.25(B), the crimes were not committed by the same conduct. The two offenses are allied and must be merged for sentencing only when "the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Johnson,* 2010–Ohio–6314, at ¶ 49, 128 Ohio St.3d 153, 942 N.E.2d 1061, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008–Ohio–4569, ¶ 50.

{¶ 130} The remaining aggravated robbery count relating to Russell was based upon the allegation that the co-defendant, Carvell Fomby, had a deadly weapon in his possession and displayed or brandished it. Fomby first displayed the firearm when he placed it on Russell's head immediately after the initial intrusion into the home. It was also at that point that Fomby told Russell that he and appellant wanted "everything" Russell had,

thereby stating the intent to commit a theft offense against him. That conduct alone, in which appellant was complicit, satisfied all elements of aggravated robbery under R.C. 2911.01(A)(1).

{¶ 131} Under R.C. 2911.11(A)(1), the aggravated burglary as to Russell was fulfilled when appellant inflicted physical harm to Russell in the ensuing scuffle ending by the refrigerator. Given that the physical harm element for aggravated burglary was committed by additional subsequent conduct that was not needed to prove the aggravated robbery, the counts do not merge.

{¶ 132} In other words, separate sentences are permitted for the two offenses against Russell because the commission of the two crimes were not based upon the exact same conduct; i.e., an additional act was performed which, although unnecessary for the commission of aggravated robbery, completed the offense of aggravated burglary. If a separate penalty could not be imposed for the aggravated burglary, it would essentially mean that appellant and Formby would be free to inflict physical harm upon Russell without having to face additional penalty. Such a result was clearly not intended by the General Assembly in enacting R.C. 2941.25(B). *See State v. Frazier,* 58 Ohio St.2d 253, 389 N.E.2d 1118 (1979); *State v. Monroe,* 105 Ohio St.3d 384, 827 N.E.2d 285, 2005–Ohio–2282, ¶ 68; *State v. ONeil,* 11th Dist. Portage No.2010–P–0041, 2011–Ohio–2202, ¶ 46–51.

{¶ 133} The trial court correctly imposed separate sentences regarding the aggravated burglary count and the aggravated robbery count relating to Russell Perry, as well as the separate aggravated robbery count pertaining to Shaquetta Page. Thus, appellant's thirteenth assignment lacks merit.

{¶ 134} Under his fourteenth assignment, appellant states that the trial court erred in imposing two concurrent eight-year terms on the two remaining counts of aggravated robbery. Essentially, he maintains that the two aggravated robbery counts should have been merged for purposes of sentencing because, under the facts of this case, he could not be convicted of both offenses.

-55-

Appellant submits that the imposition of concurrent terms is impermissible when separate convictions were not feasible.

{¶ 135} In instructing the jury on these two counts, the trial court indicated that the first charge of aggravated robbery, as set forth in the second count of the indictment, related solely to Russell, and that the other remaining charge of aggravated robbery, as set forth under the fourth count of the indictment, pertained solely to Shaquetta. Furthermore, there was sufficient evidence to prove that appellant aided and abetted his co-defendant in the commission of separate offenses of aggravated robbery in relation to both victims.

{¶ 136} Since there were separate victims as to each of the two remaining counts of aggravated robbery, those charges were not "allied" offenses that had to be merged under R.C. 2941.25. *Chaney,* 2012–Ohio–4933, ¶ 26–28. Thus, because appellant could be convicted and sentenced on both counts, the imposition of concurrent prison terms was permissible. Appellant's fourteenth assignment is without merit.[199]

To the extent that the state appellate court decision relating to Lewis' due process claims pertaining to sentencing and merger based on state law, this reviewing Court defers to the state appellate court's interpretation of Ohio law, and Lewis is not entitled to federal habeas relief based on a state law claim.  As to federal constitutional right implications, Lewis has not established that the state appellate court's decision is not contrary to or involved an unreasonable application of clearly established Supreme Court precedent.

The Eighth Amendment to the U.S. Constitution provides that "cruel and unusual punishments [shall not be] inflicted" and Eighth Amendment is binding upon the states

---

[199] ECF # 9, Attachment 1 at 120.

through the Fourteenth Amendment's Due Process Clause.[200]  To pass Eighth Amendment scrutiny, the Supreme Court has determined that strict proportionality between a crime and its punishment is not required.[201]

The Sixth Circuit has adopted the *Harmenlin* "narrow proportionality principle" and a sentence must be grossly disproportionate to the conduct being punished to violate the Eighth Amendment.[202]   State trial court judges are given great discretion in determining a defendant's sentence and substantial deference is given to a sentencing court's decision and the legislature's broad authority to enact criminal penalties.[203]  Outside the context of capital punishment, successful federal constitutional challenges to the length of a sentence alone are rare.[204]  A sentence that falls within the maximum penalty set by state statute generally does not constitute cruel and unusual punishment and a sentence is authorized by law if it does not exceed the maximum terms that the trial court is permitted to impose by statute.[205] Furthermore, consecutive sentencing is constitutionally permissible.[206]

---

[200] *Robinson v. California*, 370 U.S. 660 (1962).

[201] *Harmelin v. United States*, 501 U.S. 957, 959-960 (1991).

[202] *U.S. v. Brooks*, 209 F.3d 577 (6th Cir. 2000).

[203] *Solem v. Helm*, 463 U.S. 277 (1983).

[204] *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

[205] *Austin v. Jackson*, 213 F.3d 298, 302 (6 th Cir. 2000); *U.S. v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003).

[206] *Oregon v. Ice*, 555 U.S. 160 (2009); *Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *State v. Vasquez*, 18 Ohio App.3d 92, 481 N.E. 2d 640 (1984).

This Court is obligated to defer to the state appellate court's finding that Lewis' sentences were not contrary to Ohio law, and Lewis has not established an Eighth Amendment or federal due process violation sufficient to warrant habeas relief. Accordingly, Lewis is not entitled to federal habeas relief on his sentencing and merger claims and, therefore, his seventh, eighth, ninth, and tenth grounds for relief should be denied.

5.    *Ground Eleven*

Lewis' claim of ineffective assistance of trial counsel contained in ground eleven should be denied. The state appellate court reasonably rejected Lewis' Sixth Amendment claim in accord with clearly established Supreme Court precedent and that decision must be given AEDPA deference in this action:

> {¶ 159} Under his final assignment, appellant asserts that he was denied effective assistance of trial counsel. In evaluating ineffective assistance claims, an appellate court must apply the two-part test promulgated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
>
> {¶ 160} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."

-58-

{¶ 161} " * * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–688. "To warrant reversal, '(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Bradley,* 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland, supra,* at 694.

{¶ 162} Without providing a specific argument, appellant claims the performance of his trial counsel was deficient in the following respects: (1) "Counsel failed to object to the host of leading questions asked by the prosecutor which contained the answers;" (2) "Counsel failed to object to the jury instructions which did not reflect the allegations of the indictment;" (3) "Counsel failed to object to the amendment of the indictment by the prosecutor and the court;" (4) "Counsel failed to object to the consolidation of the case and the transfer of the case from one judge to another;" (5) "Counsel failed to object to the 911 call which was made by a person who did not testify but rather the daughter of Shaquetta Page;" (6) "Counsel failed to object to hearsay where defendant's name was obtained from Shaquetta Page speaking with friends;" (7) "Counsel failed to object to an improper question which assumed that defendant was the one who left the premises when Shaquetta Page did not see defendant at all in the home that evening;" and (8) "Counsel failed to object to the sentencing by the court which imposed consecutive three year sentences when there was only one gun and defendant had no involvement with Shaquetta Page."

{¶ 163} Regarding appellant's second, third and eighth assertions, this court has already concluded that no prejudicial errors occurred in relation to these points. Hence, trial counsel did not act deficiently in failing to object.

{¶ 164} As to appellant's first assertion, the prosecutor asked the leading questions while trying to refresh Russell Perry's memory of his prior testimony. Even if an objection should have been

made, the failure did not alter the outcome of the trial based on the entirety of the record.

{¶ 165} Concerning appellant's fifth and sixth assertions, on the two occasions in question, the state sought to introduce statements from other persons. But, the state did not seek to introduce the statements for the truth of the matter asserted. Accordingly, the lack of objection was appropriate.

{¶ 166} As to appellant's fourth and seventh assertions, the record does support the conclusion that a proper objection could have been raised as to the transfer of the case to another judge and the disputed question which assumed that appellant had been inside the home. However, the record also supports the conclusion that the lack of objections did not have an adverse effect upon the outcome, as the evidence against appellant was substantial and unrefuted.

{¶ 167} Pursuant to the foregoing, appellant has failed to establish that he was denied effective assistance of trial counsel. Therefore, his twentieth assignment is without merit.[207]

The state appellate court's rejection of Lewis' ineffective assistance of trial counsel claim must be given AEDPA deference in this action.  The state appellate court applied the correct clearly established Supreme Court precedent from *Strickland* and the state appellate court's determination is not contrary to, or an unreasonable application of *Strickland* and its progeny.

An attorney's failure to make a frivolous or meritless argument or motion does not constitute ineffective assistance of counsel.[208]  The Sixth Amendment guarantees only a fair trial and a competent attorney, it does not insure that defense counsel will recognize and raise

---

[207] ECF # 9, Attachment 1 at 120.

[208] *Rupert v. Berghuis*, 619 F.Supp.2d 363, 371 (6th Cir. 2008).

every conceivable constitutional claim.[209]  Since Lewis' underlying claims lack merit, it was

objectively reasonable for the state appellate court to conclude that Lewis' trial counsel was

not constitutionally ineffective.   The conclusion is in accord with *Strickland* because Lewis

did not show deficient performance or actual prejudice.  Therefore, Lewis' eleventh ground

for relief should be denied.

## Conclusion

For the foregoing reasons, I recommend that the petition of Ricci Lewis for a writ of

habeas corpus should be dismissed in part and denied in part as set out above.


Dated: September 21, 2017                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the
specified time waives the right to appeal the District Court's order.[210]

---

[209] *U.S. v. Cronic*, 466 U.S. 648, 658 (1984); *Engle v. Isaac*, 456 U.S. 107, 133-134 (1982).

[210] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).